# EXHIBIT 1

D#2017-0029760-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**17101593**

Ann B. Harris - 56
MAR 02, 2017 11:00 AM

Rebecca Keaton  Clerk of Superior Court
Cobb County, Georgia

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **MERCEDES WILLIAMS** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **CIVIL ACTION NO. _____** |
| **vs.** ) | |
| ) | |
| **WELLSTAR HEALTH SYSTEM, INC.** ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

COMES NOW Plaintiff, **MERCEDES WILLIAMS** ("Ms. Williams" or "Plaintiff") and

states her Complaint for damages against Defendant **WELLSTAR HEALTH SYSTEM, INC.**

("Wellstar"). In support of her claim, Plaintiff shows this honorable Court the following:

## PARTIES and JURISDICTION

1.

Plaintiff Mercedes Williams is a resident of the State of Georgia and resides at 3182

Berthas Overlook, Douglasville, Georgia 30135 in Douglas County. Ms. Williams was, at all

times relevant to the claims asserted herein, an employee of Wellstar Health Systems at the

Wellstar Cobb Hospital in Cobb County, Georgia. Ms. Williams is subject to the jurisdiction of

this Court.

2.

WellStar Health System, Inc. is a not-for-profit hospital providing healthcare services in

Georgia. It offers emergency services and outpatient services, including diagnostic/treatment,

behavioral health, physical rehabilitation, substance abuse, and surgical services.

3.

Defendant Wellstar is a Georgia corporation with its principal place of business located at 3950 Austell Road, Marietta, Georgia 30066 in Cobb County.  Wellstar transacts business in Georgia and maintains offices at 805 Sandy Plains Road, Marietta, Georgia 30066 in Cobb County.  Wellstar's Cobb Hospital, where Plaintiff worked and where the instances giving rise to these claims occurred, is located at 3950 Austell Road, Marietta, Georgia 30066 in Cobb County.

4.

Defendant Wellstar may be served with a Summons and Complaint through their registered agent for service, Leo E. Reichert, 793 Sawyer Road, Marietta, GA, 30062.

5.

This case involves claims for violations of The Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"), interference with Plaintiff's rights under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq., Breach of Contract, Breach of Duty to Provide a Safe Environment, O.C.G.A. § 51-3-1, Negligent Retention and Supervision, Intentional Infliction of Emotional Distress, and related claims arising in tort and equity. Therefore, the Superior Court of Cobb County has subject matter jurisdiction over the parties in this action, pursuant to Art. VI, § IV, Para. I of the Constitution of the State of Georgia.

6.

Venue is proper in the Superior Court of Cobb County because the causes of action originated in this County, the tortious acts and harm occurred in this County, and Defendant Wellstar is a resident of this County for purposes of venue. (O.C.G.A. § 14-2-510, O.C.G.A. § 9-10-31, O.C.G.A. § 9-10-91, O.C.G.A. § 9-10-92, and O.C.G.A. § 9-10-93).

2

## STATEMENT OF FACTS

### 7.

Mercedes Williams is a Black woman born in Nottingham, England.  She is 44 years old and was raised in Nigeria by a Nigerian father and British mother.  She became a U.S. Citizen in 2006.

### 8.

Ms. Williams graduated from High School in Nigeria.  She earned her Bachelor of Science Degree in Health Care Administration with a concentration in Long Term Care on March 31, 2011.  She earned her Master's Degree in Public Health from the University of South Florida on December 13, 2013, and a Graduate Certificate in Infection Control on December 13, 2013.  On May 9, 2016, Ms. Williams earned her Doctorate in Behavioral Health from Arizona State University.

### 9.

Ms. Williams was employed by Wellstar Health System, Inc. from April 14, 2014 to July 22, 2016.  Her title was Clinical Care Partner (CCP) in the Medical Surgical Unit 5-South at Cobb Hospital ("5-South").

### 10.

WellStar's Cobb Hospital, located in Austell, Georgia, is a general medical and surgical hospital with 362 beds.  Survey data for the latest year available shows that 99,207 patients visited the hospital's emergency room.  The hospital had a total of 20,099 admissions.  Its' physicians performed 3,791 inpatient and 7,423 outpatient surgeries.[1]

### 11.

---

[1] http://health.usnews.com/best-hospitals/area/ga/wellstar-cobb-hospital-6380285

In March of 2015, a Hispanic man in his 80's in Room 588 assaulted Ms. Williams and committed battery by groping her breasts.  Ms. ShaneiKia McCullum, RN, Ms. Hollie Johnson, RN, and other nurses witnessed the sexual assault and battery.

12.

Ms. Williams reported the sexual assault and battery to her Manager, Ms. Amanda Medlock, and requested to be assigned to a different department.  Her request was denied and Ms. Medlock assigned Ms. Williams to attend to the same Hispanic man many more times.

13.

On or about June 7, 2015, while responding to her co-workers Ms. Amaka Okafor, Ms. Mariam Pedro, and Ms. Victoria McGinnis' requests for assistance helping a patient get back into bed, the patient fell on Ms. Williams, injuring her neck and shoulder on her right side.  The Charge Nurse, Ms. Jennifer Parker, observed the accident.  Ms. Williams filed an Incident Report with Risk Management and, upon information and belief, a copy was automatically sent to Ms. Amanda Medlock, MSN, RN, Ms. Williams' Manager.  Ms. Medlock did not follow-up or discuss the accident with Ms. Williams.

14.

On or about June 7, 2015, Ms. Williams went to the Cobb Wellstar Hospital Emergency Room, where she was diagnosed by Dr. R. Ahola as having suffered a Trapezius strain as a result of the accident earlier that day.  Dr. Ahola gave Ms. Williams a prescription for methocarbamol (ROBAXIN), 750 mg, for muscle spasms and Hydrocodone-acetaminophen, 325 mg, for pain and was told to see her own doctor.  Ms. Williams could not afford to visit a private doctor because she could not afford to participate in Wellstar's health insurance plan and had to cancel her participation in early 2015.  Although, upon information and belief, it was her duty to do so,

4

Ms. Medlock did not report the accident through the Wellstar Online Event Reporting System.

15.

At no time did Ms. Medlock, or anyone at Wellstar, advise Ms. Williams to go to the Risk Management office so she could be referred to a doctor or inform Ms. Williams of her right to take time off work to recover, pursuant to the Family Medical Leave Act, or the benefits available to her under Wellstar's Short Term Disability Insurance, and there were no notices of an employee's rights under the Workers Compensation laws openly posted for Ms. Williams to see.

16.

It was not until December 15, 2016, that Ms. Medlock advised Ms. Williams of the benefits available to her under Worker's Compensation Insurance.

17.

On or about the afternoon of July 4, 2015, two men in Room 581 (an elderly man in his 90's and a drunken man in his 60's), assaulted Ms. Williams and committed battery by groping her breasts and buttocks. The 60 year-old pulled Ms. Williams onto his bed. Ms. Williams called for help but no one responded. Ms. Brenda Weily, Care Partner, Ms. Elizabeth Mulkey, Care Partner, Ms. Tricia McCoy, RN, Ms. Latoya Steel, RN, and Ms. Monique Cherry, RN, either witnessed the assaults and batteries or were aware that the assaults and batteries were happening but did not try to help. Some of the Care Partners and nurses who personally witnessed the assaults just laughed. The abuse continued and eventually Ms. Williams called the Charge Nurse, Ms. Linda Nwadike, who then called Security.

18.

On information and belief, Ms. Nwadike then informed Ms. Medlock of the July 4, 2015

incident, in accordance with procedure.

19.

After her shift, Ms. Williams called the Cobb County Police Department and reported the incident.

20.

On or about July 5, 2015, Ms. Williams arrived at work for the morning shift.  Mr. Daniel DeJong, RN, laughed and said, "I heard you were groped last night."

21.

Another African-American female co-worker asked Ms. Williams "Oh, Mercedes, are you scared about a dick?"

22.

On or about July 27, 2015, Ms. Williams filed an Incident Report with the Wellstar Online Event Reporting System regarding the July 4, 2015 sexual assault and battery.

23.

On or about August 1, 2015, Ms. Williams wrote to Ms. Danyale Ziglor, Assistant VP of Human Resources, and requested that she be transferred from Unit 5-South.

24.

Ms. Ziglor refused to transfer Ms. Williams to a different unit.

25.

On or about August 5, 2015, Ms. Williams wrote to Mr. David Anderson, Chief Compliance Officer & EVP of Human Resources and Organization Learning, explaining the severity of the situation at 5-South.  She described the sexual abuse she had been subjected to in March of 2015 and on July 4, 2015, and a variety of other disturbing events that had taken place

6

at 5-South, and asked to be transferred from Unit 5-South.  Mr. Anderson told her that her

concerns had been assigned to Ms. Ziglor for investigation.

26.

On or about August 5, 2015, Ms. Williams wrote to Ms. Leila Candice L. Saunders,

President and CEO of Wellstar, asking to be assigned to a different department.  Her request to

be transferred was ignored.

27.

On or about August 13, 2015, Ms. Williams met with Ms. Ziglor, Ms. Leila Devaughn,

Sr. HR Consultant, and other staff members regarding the July 4, 2015 sexual assault and

battery.

28.

AT the August 13, 2015 meeting, Ms. Ziglor told Ms. Williams "You were not sexually

assaulted.  As a matter of fact, you are over exaggerating the sexual assault."

29.

Knowing full-well she was sexually assaulted and abused by Wellstar patients, Ms.

Ziglor's shocking statement played over and over again in Ms. Williams' mind.  Because of this

statement and her treatment by Wellstar, she plunged into depression.

30.

On or about August 31, 2015, Ms. Williams met with Ms. Ziglor and again asked to be

transferred to a different unit.  Ms. Ziglor told Ms. Williams that she did not qualify for a Care

Coordinator or Case Management position because she did not have experience in these areas,

which was incorrect.  Ms. Ziglor told Ms. Williams that she could only apply for the position she

already had at a different hospital or in a different unit.  Ms. Ziglor also told Ms. Williams not to

talk to the managers of other units about a job.

31.

Ms. Williams applied for over twenty positions but was denied every one.  Upon information and belief, Wellstar filled over 500 positions during this time.  Upon information and belief, by July of 2015, about 90% of the employees in Ms. Williams' unit who asked to be transferred or promoted to other units had their requests granted.

32.

On or about December 1, 2015, Ms. Williams asked Ms. Medlock for time off to recuperate from the injuries she had suffered in the June 7, 2015 accident and the sexual assault and batteries she had suffered.  In addition to severe depression, Ms. Williams had been experiencing continuous pain running from her right ear, down the side of her neck, through her right shoulder, down to her right hand, into her right hip and down to her foot since the June 7, 2015 accident and was taking heavy doses of painkillers, including Ibuprofen, Prednisone, Cyclobenzaprine, and a muscle relaxer, as prescribed by her physicians.  Ms. Medlock told her "your doctor did not give me any information to allow you to take time off."  Ms. Williams explained to Ms. Medlock that she did not have her own doctor because she did not have medical insurance.  On this occasion and on every one of the multiple occasions thereafter when Ms. Williams requested time off to heal from her ever escalating pain and injuries, Ms. Medlock responded "no doctor's note, no time off."

33.

On or about December 3, 2015, Ms. Williams left a message for Ms. Linda Norwood, Risk Management and Workers' Compensation Coordinator, and Mr. Chris Shaw, Manager of Workers Compensation & GL Risk Management, and sent an email to Mr. Sam Storey, Director

8

of the Risk Management Department, telling them that she was still in severe pain and asking what could be done about it.

34.

Ms. Williams received a response from Ms. Linda Norwood, who provided her with a list of Worker's Compensation doctors she could visit and advised Ms. Williams to seek counsel from Ms. Medlock. It was the first time anyone at Wellstar had mentioned Worker's Compensation Insurance to Ms. Williams. Ms. Williams called several of the doctors but was told she would have to pay fees to have Wellstar send the required documents. Ms. Williams could not afford these fees so she tried to reach Ms. Norwood to see if there was a more affordable way to send the documents. Ms. Norwood never responded.

35.

On or about December 16, 2015, Ms. Williams wrote to Ms. Medlock asking to be placed in a "low risk" job because the pain she was experiencing as a result of the June 7, 2015 accident had become unbearable. Ms. Medlock responded that she had "reached out to worker's comp to see what the right approach is, as 5-South doesn't really have any "low risk" jobs." It was the first time Ms. Medlock had mentioned Worker's Compensation Insurance to Ms. Williams.

36.

On or about December 19, 2015, Ms. Williams visited Ms. Cindy Stranko, the Nurse Supervisor, to ask for a change of assignment because she had severe pain in her neck and shoulder. Ms. Stranko instructed Ms. Williams to call Ms. Medlock. Ms. Williams told Ms. Medlock that she was at the Supervisors office to ask for a change of assignment because of the pain in her neck and shoulder. Ms. Medlock told her she needed to present something from her doctor that showed that she couldn't work. When Ms. Williams explained that she did not have

health insurance and therefore could not afford to see a private doctor, Ms. Stranko encouraged

her to go to the Emergency Room to get a note from the doctor on duty.   The Emergency Room

doctor gave Ms. Williams a note, which she placed in the folder on Ms. Medlock's door.  Soon

afterward, Ms. Medlock reassigned Ms. Williams the position of Unit Secretary.

### 37.

On or about December 19, 2015, while visiting Ms. Stranko to ask for a change of

assignment, Ms. Stranko gave Ms. Williams the telephone number for Wellstar's Worker's

Compensation department and told Ms. Williams to go back to the Wellstar Cobb Hospital

Emergency Room where she would be instructed how to file a Worker's Compensation claim.

Ms. Williams called Ms. Janet Tokas, the After-hours Receptionist in Risk Management, and

Ms. Tokas started a Workman's Compensation case for Ms. Williams.

### 38.

On or about December 22, 2015, Ms. Williams visited Dr. Tapan K. Daftari, Daftari, an

Orthopedic Spine Specialist at Resurgens Orthopedics and one of the doctors on the list of

Worker's Compensation doctors that Ms. Norwood had given her.  Dr. Daftari determined that

when the patient fell on her, it aggravated her degenerative disk disease.  He gave Ms. Williams

an injection of cortizone, prescribed pain killers and physical therapy for six weeks, and referred

her to Dr. Brian Makhuli, an Orthopedic Shoulder Specialist.  Dr. Daftari recommended that Ms.

Williams return to work on light duty.

### 39.

On or about December 24, 2015, Ms. Medlock called Ms. Williams to rearrange her

schedule in response to Dr. Daftari's recommendation.  Ms. Medlock told Ms. Williams that she

would be filling in on the weekends only as a Unit Secretary.  When Ms. Williams asked to be

assigned to an area that best matched her skill set, such as Care Coordination, Case Management, or Behavioral Health, areas in which she was certified, Ms. Medlock told her that - in the hospital of 342 beds - filling in on weekends was all she had to offer.

40.

Ms. Williams went from working close to 44-46 hours per week plus overtime to working less than 24 hours per week and was forced to live off her savings.  Upon information and belief, this reduction in the number of hours Ms. Williams could work per week meant that she had become ineligible to receive the benefits of Wellstar's Short Term Disability Insurance policy. Ms. Williams believes that this reduction in her hours and Wellstar's subsequent unsuccessful efforts to find a different position for her that fit her skill set were deliberately calculated to prevent her from taking Short Term Disability Leave.

41.

On or about April 29, 2016, Ms. Williams began experiencing heart palpitations, continued and increasing depression, stomach acid, exacerbated asthma, and insomnia. Ms. Williams was also diagnosed with first degree atrioventricular blockage.

42.

On or about April 29, 2016, Ms. Ziglor sent an email to Wellstar's HR department and to Ms. Medlock stating that they had received a medical clearance for Ms. Williams to return to work in her normal capacity.  The email was also sent to Ms. Stranko, the Nurse Supervisor.  Ms. Williams had not been examined by a Dr. Daftari since her December 22nd visit and although she visited Dr. Makhuli in April of 2016, neither doctor had given her a medical clearance.

43.

On or about May 7, 2016, Ms. Williams called the Cobb Hospital Resource Management

11

Center (RMC) at about 5:00am to verify her shift. Ms. Tracy Tucker, the Scheduler at the RMC, advised her that she would be returning to work in her previous capacity as a Clinical Care Partner. Ms. Williams explained to Ms. Tucker that she was supposed to be on light duty and that she was concerned that returning as a CCP would jeopardize her recovery from her back injury. Ms. Tucker contacted Ms. Stranko who stated that Wellstar did not have any work for Ms. Williams.

44.

On or about June 1, 2016, Mercedes revisited Dr. Daftari, her Orthopedic Specialist, and Dr. Daftari gave her permission to return to work with restrictions, even though she was still experiencing some symptoms. Dr. Daftari told Ms. Williams that he was of the opinion that if Ms. Williams had been provided information regarding her rights under the Worker's Compensation laws and the FMLA, she would have been able to receive treatment earlier and her injuries would have been healed by now.

45.

On or about June 22, 2016, Ms. Williams was reexamined by Dr. Daftari, her Orthopedic Spine Specialist. Dr. Daftari diagnosed Mercedes as having abdominal pain, anxiety, depression, fever, palpitations and anemia and  instructed her to contact him right away if she experienced any increased numbness, tingling, pain, inability to walk, or trouble with her bowel or bladder. Dr. Daftari released Ms. Williams to return to work and sent his report, with his recommendations for ergonomic modifications and instructions to always take care and caution with bending, lifting and twisting, to Wellstar Risk Management.

12

## COUNT ONE
**VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1991, 42 U.S.C. § 1981**

46.

Plaintiff incorporates by reference the facts set forth in all of the preceding paragraphs of this Complaint, as if set forth fully herein.

47.

Wellstar subjected Ms. Williams, an educated Black woman, to a racially hostile work environment that was permeated with discriminatory intimidation, ridicule, and insult.

48.

Ms. Williams is a member of a protected group, as defined under 42 U.S.C. § 1981, because she is Black.

49.

Wellstar intentionally discriminated against, harassed, and created for Ms. Williams an unbearably hostile work environment in large part because she is black.  Comparable persons who were white or non-Black, were not treated with the level of abuse Ms. Williams continuously received.  By way of example:

a.  Ms. Medlock demanded that she continue to attend to and wait on the Hispanic man who had sexually assaulted and battered her;

b.  White and non-Black Wellstar Nurses, in conspiracy with Ms. Medlock to discriminate against Ms. Williams and make Ms. William's life miserable, refused to help Ms. Williams when she was again sexually assaulted and battered on July 4, 2015.  They even witnessed the assaults and batteries or were aware that the assaults and batteries were happening, but did nothing to help.  Rather, they just laughed at, humiliated and ridiculed her, saying such things as "You

13

aren't afraid of a little dick, are you?;"

c.  Ms. Ziglor refused to believe the facts of the assault, demeaned and terrorized her
    by blatantly looking straight at Ms. Williams and declaring, "You were not
    sexually assaulted." Ms. Ziglor, who of course was not there at the assault,
    humiliated Ms. Williams by insisting Ms. Williams was "over exaggerating the
    sexual assault;"

d.  Wellstar refused to allow her to use her earned title of doctor when a comparable
    male employee was allowed to do so;

e.  Wellstar refused through certain Wellstar employees to transfer her to a different
    unit or reassign her to an appropriate new position to escape the torment of the
    ridiculing nurses and unfair and dangerous assignments;

f.  Wellstar reassigned Ms. Williams (Dr. Williams) to a secretarial position reduced
    the number of hours she worked such that she could not qualify for Short Term
    Disability Leave and so that it became almost impossible to support herself and
    her children;

g.  Ms. Ziglor instructed Ms. Williams that she was not to talk to other managers
    about potential jobs, thus "keeping her in her place;"

h.  Ms. Medlock and other Wellstar employees' failed or refused to  advise Ms.
    Williams to go to the Risk Management office so she could be referred to a doctor
    to address her repeatedly reported pain and injury;

i.  Ms. Medlock and other Wellstar employees' failed or refused to advise Ms.
    Williams of her right to take time off work to recover, and that benefits were
    available to her under Wellstar's Short Term Disability Insurance or FMLA;

14

j.  Ms. Medlock refused to grant Ms. Williams time off from work when she was in

   extreme pain without a doctor's note, yet never advised her of entitlement to time

   off under FMLA or a doctor under Workers Compensation law;

k.  Ms. Ziglor falsely stated in an email that she had received a medical clearance for

   Ms. Williams to return to work in her normal capacity, when in fact no such

   medical clearance had been issued;

l.  Ms. Medlock, Ms. Ziglor, Wellstar nurses, and others engaged in numerous

   incidences intended to harm, discourage, humiliate, frighten, disparage,

   intimidate, insult, and ridicule Ms. Williams to such an extent that no reasonable

   person could endure it.  Among many other things, one nurse in charge snapped

   her fingers repeatedly in Ms. Williams face, like she was a dog; others screamed

   at her so loud it woke up patients; another refused to allow her to sit at the nurses

   station like the white nurses, even though they knew she was chronically in

   excruciating pain, and in other ways Ms. Medlock, her bevy of conspiring nurses,

   Ms. Ziglor, and other Wellstar employees discriminated against and harassed her,

   and created for her the most intolerable, hostile work environment,  because Ms.

   Williams is black and educated.

50.

Ms. Williams was subjected to extreme harassment and abuse by certain Wellstar

employees because she is Black.  The Wellstar employees working in Unit 5-South who were

involved in the discriminatory harassment were mostly White females and, included:

- Amanda Medlock, MSN, RN, Ms. Williams' Manager, a White woman in her
  30's
- Rebecca (Becky) Guntharp, Assistant Nurse Supervisor to Amanda Medlock,
  White woman in her 30's

15

- Jennifer Parker, RN, Ms. Williams' Supervisor, a White woman in her 30's
- Victoria (Tori) Langley, RN, a White woman in her mid-20's
- Tricia McCoy, RN, a White woman in her mid-30's
- Elizabeth Mulkey, Care Partner, a White woman in her mid-40's

51.

The harassment and abuse Ms. Williams endured at the hands of certain Wellstar

employees was sufficiently severe and pervasive as to alter the conditions of Ms. Williams'

employment and create a discriminatorily abusive working environment that unreasonably

interfered with her job performance and in which she found it almost impossible to function.

52.

Wellstar is responsible, pursuant to O.C.G.A § 51-2-2 and other applicable laws and via

the theory of respondeat superior, for its employees' violations of The Civil Rights Act of 1991,

42 U.S.C. § 1981 because the employees were subject to Wellstar's immediate direction and

control and were acting within the scope of their employment.

53.

Plaintiff has suffered and is entitled to recover damages proximately caused by

Wellstar's violations of the 42 U.S.C. § 1981a et seq. in an amount to be proved at a trial by

jury, pursuant to 42 U.S.C. § 1981a and other applicable laws.

54.

Plaintiff is also entitled to punitive damages under 42 U.S.C. § 1981a, and other

applicable laws, to punish, penalize, or deter Defendant from its course of conduct, in an amount

to be determined by the enlightened conscience of the jury after hearing the evidence.

55.

The actions of Defendant also constitute bad faith on its part and because they were

willful and intentional, and have caused Plaintiff unnecessary trouble and expense, Plaintiff is

entitled to recover the attorneys' fees she has incurred in bringing this action, together with all

costs of litigation, pursuant to 29 U.S.C. § 2617(a)(3), and other applicable laws.

## COUNT TWO
## INTERFERENCE WITH MS. WILLIAMS' RIGHTS UNDER
## THE FAMILY MEDICAL LEAVE ACT, 29 U.S.C. § 2601, et seq.

56.

Plaintiff incorporates by reference the facts set forth in all of the preceding paragraphs of

this Complaint, as if set forth fully herein.

57.

Ms. Williams was eligible for FMLA protections because she worked at least 12 months

(from April 14, 2014 to July 22, 2016), for at least 1,250 hours at Wellstar Cobb Hospital, a

location where Wellstar employed at least 50 people.

58.

Wellstar Health System, Inc. was covered by the FMLA because, at all times relevant

herein, it had more than 50 employees within a 75-mile radius of the Ms. Williams' workplace

59.

Ms. Williams was entitled to take medical leave under the FMLA because she was

unable to work due to her Trapezius strain, which caused her extreme neck and arm pain, as well

as the abdominal pain, anxiety, depression, fever, palpitations, and anemia she was suffering as a

result of the sexual assaults and batteries, all of which qualified as serious medical conditions

under the FMLA.

60.

Ms. Williams provided Wellstar with sufficient notice of her intent to take leave when

17

it was reported through the Wellstar Online Event Reporting System that the Cobb Hospital

Emergency Room doctor, Dr. R. Ahola, diagnosed her as having Trapezius strain on or about

June 7, 2015 - when she asked her Manager, Ms. Medlock, for time off to recuperate on or about

December 1, 2015 - when she left a message for Ms. Linda Norwood, Risk Management and

Workers' Compensation Coordinator, and Mr. Chris Shaw, Manager of Workers Compensation

& GL Risk Management, and sent an email to Mr. Sam Storey, Director of the Risk Management

Department, telling them that she was still in severe pain and asking what could be done about it

on or about December 3, 2015 - and when she went to the Nurse Supervisor's office in pain on or

about December 19, 2015.

61.

Wellstar denied Ms. Williams FMLA benefits to which she was entitled by doing

nothing to determine her entitlement to FMLA leave, despite Ms. Williams having provided

Wellstar with notice of her serious medical conditions on numerous occassions.

62.

Wellstar interfered with, restrained, and/or denied the exercise of or the attempt by Ms.

Williams to exercise her rights to take medical leave, in violation of Ms. Williams' rights under

the FMLA, 29 U.S.C. § 2601, et seq., and pursuant to 29 CFR §2615 (a)(1).

63.

Plaintiff has suffered and is entitled to recover damages proximately caused by

Wellstar's violations of the FMLA in an amount to be proved at a trial by jury, pursuant to 29

U.S.C. § 2601, et seq.

64.

The actions of Defendant also constitute bad faith on its part and because they were

18

willful and intentional, and have caused Plaintiff unnecessary trouble and expense, Plaintiff is entitled to recover the attorneys' fees she has incurred in bringing this action, together with all costs of litigation, pursuant to 29 U.S.C. § 2617(a)(3), and other applicable laws.

## COUNT THREE
## BREACH OF CONTRACT

### 65.

Plaintiff incorporates by reference the facts set forth in all of the preceding paragraphs of this Complaint, as if set forth fully herein.

### 66.

After working full time for Wellstar since her original employment, Ms. Williams was demoted by Wellstar to a 0.4 FTE ("Full Time Employee") after she requested an accommodation for her pain.  Employees classified as 0.4 FTE are allowed to work only 32 hours per 2-week pay period.

### 67.

For every 40 hours worked, Ms. Williams was entitled to approximately 7 hours of Personal Time Off ("PTO").

### 68.

According to Wellstar, Ms. Williams had accumulated 161.31 PTO hours at the time she left Wellstar's employment.[2]

### 69.

Upon information and belief, one PTO hour is worth $12.75.  161.31 hours x $12.75 = $2,056.70.

---

[2] *See* Wellstar records system statement of Personal Time Off hours accumulated.

70.

Plaintiff is entitled to recover $2,056.70 in damages proximately caused by Wellstar's breach of contract, applicable Georgia laws, including O.C.G.A. § 13-6-1.

71.

Plaintiff has made demand for this earned PTO, but Wellstar has ignored her request.

72.

The actions of Defendant also constitute bad faith on its part and because they were willful and intentional, and have caused Plaintiff unnecessary trouble and expense, Plaintiff is entitled to recover the attorneys' fees she has incurred in bringing this action, together with all costs of litigation, pursuant to Georgia law under O.C.G.A. §13-6-11, and other applicable laws.

## COUNT FOUR
## BREACH OF DUTY TO PROVIDE A SAFE ENVIRONMENT

73.

Plaintiff incorporates by reference the facts set forth in all of the preceding paragraphs of this Complaint, as if set forth fully herein.

74.

Ms. Williams was the victim of sexual assault and battery, as defined under O.C.G.A. § 51-1-13 and O.C.G.A. § 51-1-14, in March of 2015 and on July 4, 2015, while working at the Wellstar Cobb Hospital.

75.

Wellstar had actual and constructive knowledge of the sexual assault and battery being committed upon Ms. Williams in March of 2015 and on July 4, 2015.

76.

Wellstar employees had a duty to exercise ordinary care to furnish a reasonably safe work

20

environment for Ms. Williams, to adopt and use methods and processes reasonably adequate to render her place of employment safe, and to do every other thing reasonably necessary to protect Ms. Williams' life, health, safety, and welfare, as required under O.C.G.A. § 51-3-1 and other applicable laws.

77.

Wellstar employees breached their duty to use ordinary care to furnish a reasonably safe work environment when they failed to protect Ms. Williams from sexual assault and battery, deliberately subjected Ms. Williams to further assault and battery, refused or neglected to assist Ms. Williams when she was being assaulted and battered, refused or neglected to transfer Ms. Williams to a different unit, and refused to acknowledge that she had been assaulted and battered or help her in any way, despite her repeated pleas for help.

78.

Wellstar is responsible, pursuant to O.C.G.A § 51-2-2 and other applicable laws and via the theory of respondeat superior, for its employees' breach of duty to furnish a reasonably safe work environment for Ms. Williams because the employees were subject to Wellstar's immediate direction and control and were acting within the scope of their employment.

79.

Ms. Williams was unable to avoid the sexual assault and battery through the exercise of ordinary care. Furthermore, Ms. Williams was unable to avoid further sexual assault and battery due to the actions of Wellstar employees who maintained supervisory control over her and her environment and who, despite her myriad requests, refused to protect her from the offending patients and/or directed her to continue to attend to the patients who were committing the sexual assault and battery.

21

80.

Wellstar breached its' Duty to Provide a Safe Environment for Ms. Williams, in violation of O.C.G.A. § 51-3-1 and other applicable laws, and has proximately caused Ms. Williams past, present and future physical suffering and mental anguish, among other damages.

81.

Ms. Williams has suffered and is entitled to recover her damages proximately resulting from Wellstar's breach of its Duty to Provide a Safe Environment in an amount to be proved at a trial by jury.

82.

Plaintiff is also entitled to punitive damages under O.C.G.A. § 51-12-5.1, and other applicable laws, to punish, penalize, or deter Defendant from its course of conduct, in an amount to be determined by the enlightened conscience of the jury after hearing the evidence.

83.

The actions of Defendant also constitute bad faith on its part and because they were willful and intentional, and have caused Plaintiff unnecessary trouble and expense, Plaintiff is entitled to recover the attorneys' fees she has incurred in bringing this action, together with all costs of litigation, pursuant to applicable Georgia laws, including O.C.G.A. §13-6-11,

## COUNT FIVE
## NEGLIGENT HIRING, RETENTION, AND SUPERVISION

84.

Plaintiff incorporates by reference the facts set forth in all of the preceding paragraphs of this Complaint, as if set forth fully herein.

85.

Wellstar failed to exercise ordinary care in the hiring, retention, and supervision of its'

22

employees, particularly Ms. Amanda Medlock, Ms. Williams' Supervisor, and Ms. Danyale

Ziglor, Assistant VP of Human Resources.[3]

86.

Wellstar employees were acting within the scope of their employment at all times and

in all instances where Ms. Williams was subjected to the injury and damages alleged herein.[4]

87.

Wellstar knew or should have known that certain employees, particularly Ms. Medlock,

and Ms. Ziglor, could cause the type of physical, mental, and emotional harm sustained by Ms.

Williams.[5]

88.

Wellstar failed to exercise ordinary care and negligently retained Ms. Medlock and Ms.

Ziglor even after it became aware of the employees' incompetency.

89.

Wellstar failed to exercise ordinary care to warn Ms. Williams of the dangerous

environment it allowed its employees to maintain, in violation of Georgia law.

90.

Plaintiff has suffered and is entitled to recover damages, including without limitation,

past, present, and future mental and physical pain and suffering, proximately caused by

---

[3] "To establish a negligent retention or supervision claim, the plaintiff must show that the employer knew or should have known it was 'foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the plaintiff.' " Dehaan v. Urology Center of Columbus, LLC, No. 4:12–CV–06 (CDL), 2012 U.S. Dist. LEXIS 52857, at *6 (M.D. Ga. Apr. 16, 2012) (quoting Drury v. Harris Ventures, Inc., 302 Ga.App. 545, 548, 691 S.E.2d 356, 359 (Ga. Ct. App. 2010) (internal quotation omitted)).

[4] See, e.g. Underberg v. Southern Alarm, Inc., 284 Ga.App. 108, 113 (2007). "The question is not whether the servant was acting within the scope of his authority, but whether in view of his known characteristics such an injury by him was reasonably to be apprehended or anticipated. Still, the act must be committed 'within the tortfeasor's working hours or under the color of employment.'" Citing TGM Ashley Lakes, Inc. v. Jennings, 264 Ga.App. 456, 460(1)(b), 590 S.E.2d 807 (2004).

[5] Id.

23

Wellstar's willful and wanton disregard for Ms. Williams' safety and well-being and Wellstar's breach of its duty to exercise ordinary care in the selection, retention, and supervision of its' employees in an amount to be proved at a trial by jury.

91.

Plaintiff is also entitled to punitive damages under O.C.G.A. § 51-12-5.1(g), and other applicable laws, to punish, penalize, or deter Defendant from its course of conduct, in an amount to be determined by the enlightened conscience of the jury after hearing the evidence.

92.

The actions of Defendant also constitute bad faith on its part and because they were willful and intentional, and have caused Plaintiff unnecessary trouble and expense, Plaintiff is entitled to recover the attorneys' fees she has incurred in bringing this action, together with all costs of litigation, pursuant to Georgia law under O.C.G.A. §13-6-11, and other applicable laws.

## COUNT SIX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

93.

Plaintiff incorporates by reference the facts set forth in all of the preceding paragraphs of this Complaint, as if set forth fully herein.

94.

Wellstar employees intentionally subjected Ms. Williams to abusive treatment that was so terrifying and insulting as naturally to humiliate, embarrass and frighten her.[6]

95.

Wellstar employees who intentionally and repeatedly subjected Ms. Williams to abusive

---

[6] *See* Anderson v. Chatham, 190 Ga.App.559, 379 S.E.2d 793(1989).

24

treatment were aware of her particular susceptibility to such treatment.[7]

96.

The conduct on the part of Wellstar's employees was sufficiently extreme and outrageous to inflict emotional distress upon Ms. Williams.

97.

Certain Wellstar employees who subjected Ms. Williams to abusive treatment maintained supervisory or managerial positions over Ms. Williams and therefore had special relationship in which, due to their control over Ms. Williams, produced a character of outrageousness that otherwise might not have existed.[8]

98.

Wellstar employees acted under the authority of Wellstar and within the scope of their employment when they acted to intentionally inflict harm on Ms. Williams.

99.

Ms. Williams experienced heart palpitations, depression, stomach acid, exacerbated asthma, insomnia, abdominal pain, anxiety, depression, fever, heart palpitations, anemia, and other forms of physical, mental, and emotional injury as a proximate result of Wellstar's actions.

100.

Plaintiff has suffered and is entitled to recover all damages proximately caused by Wellstar's intentional infliction of emotional distress, including without limitation, past, present and future mental anguish, in an amount to be proved at a trial by jury.

101.

The actions of Defendant also constitute bad faith on its part and because they were

---

[7] See Williams v. Voljavec, 202 Ga.App. 580, 582, 415 S.E.2d 31 (1992).
[8] See Anderson v. Chatham, 190 Ga.App.559, 379 S.E.2d 793, 800 (1989).

willful and intentional, and have caused Plaintiff unnecessary trouble and expense, Plaintiff is entitled to recover the attorneys' fees she has incurred in bringing this action, together with all costs of litigation, pursuant to Georgia law under O.C.G.A. §13-6-11, and other applicable laws.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff demands a TRIAL BY JURY and requests the following relief:

1) That summons and process issue requiring Defendant to be served and to appear as provided by law to answer the allegations of this Complaint;

2) That Ms. Williams recovers all damages against Wellstar Health System, Inc. in such an amount that a jury determines from the evidence she is entitled to recover under Georgia and federal law including, but not limited to:

   a) Back Pay under The Civil Rights Act of 1991, 42 U.S.C. § 1981a and the Family Medical Leave Act, pursuant to §29 U.S.C. § 2601, et seq;

   b) Front Pay under The Civil Rights Act of 1991, 42 U.S.C. § 1981a and the Family Medical Leave Act, pursuant to §29 U.S.C. § 2601, et seq;

   c) Compensatory Damages under The Civil Rights Act of 1991, 42 U.S.C. § 1981a;

   d) Liquidated Damages under the Family Medical Leave Act, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

   e) Punitive damages for Wellstar's intentional discriminatory conduct, pursuant to applicable law, including The Civil Rights Act of 1991, 42 U.S.C. § 1981a;

   f) Actual Damages for Wellstar's Breach of Contract in the amount of $2,056.70, pursuant to O.C.G.A. § 13-6-1 and other applicable laws;

   g) General and Compensatory damages for Ms. Williams in an amount based on Wellstar's tortious actions, or such other damages as provided by law and established at trial;

26

h) Compensatory damages for Ms. Williams' past, present and future mental and emotional anguish suffered as a result of Wellstar's unlawful tortious acts;

i) Punitive damages for Wellstar's intentional and tortious conduct, pursuant to applicable law, including O.C.G.A §51-12-5.1 and other applicable laws;

j) Reasonable attorneys' fees and costs of litigation due to Wellstar's bad faith and intentional tortious conduct, and for causing Ms. Williams unnecessary trouble and expense, pursuant to 42 U.S.C. § 1981a and the Family Medical Leave Act, 29 U.S.C.A. § 2617(a)(3); O.C.G.A. §13-6-11; and other applicable laws.

k) An award of pre-judgment interest, pursuant to OCGA § 7-4-15;

3) Other and further relief as this Court deems just and proper.

This 1ˢᵗ day of February 2017.

Respectfully submitted,

**HIPES LAW LLC**

By:

Jeanne Bynum Hipes
Georgia Bar No. 100575
Sheri Oluyemi
Georgia Bar No. 254547
Counsel for Plaintiff, Mercedes Williams

Hipes Law LLC
2475 Northwinds Parkway, Suite 200
Alpharetta, GA 30009
PH:  678-8677006
FAX: 770-783-5010
EMAIL: counsel@hipeslaw.com

27

ID#2017-0029761-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA
**17101593**
Ann B. Harris - 56
MAR 02, 2017 11:00 AM

Rebecca Keaton, Clerk of Superior Cour
Cobb County, Georgia

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

MERCEDES WILLIAMS       )
                               )
      Plaintiff,       )
                               )      CIVIL ACTION NO. _____
vs.                           )
                               )
WELLSTAR HEALTH SYSTEM, INC.  )      JURY TRIAL DEMANDED
                               )
      Defendant.     )
                               )

## PLAINTIFF'S MOTION TO STAY
## PENDING EXHAUSTION OF EEOC ADMINISTRATIVE REMEDIES

On February 17, 2017 Plaintiff herein filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") against the above-named Defendant. The charges relate back to August 19, 2016, EEOC charge number #410-2017-02452. These charges have to do with discriminatory treatment and retaliatory treatment made unlawful by Title VII of the Civil Rights Act of 1964, as amended ("Title VII") (for race and national origin discrimination and retaliation). Plaintiff is required to exhaust her administrative remedies by filing each of these claims with the EEOC before filing them with the court. The EEOC is tasked with investigating these claims. 29 CFR §1601.15. If no resolution occurs in the EEOC, the EEOC typically issues a Right to Sue letter, which gives Plaintiff the right to file these Title VII charges within 90 days in state or federal court. See generally, 29 CFR §1601 et seq. (Subpart B).

However, Plaintiff has other charges arising from the same circumstances as the above charges, which are not required (or even in some cases permitted) to go through the EEOC process.

1

These charges include race discrimination and retaliation under 42 USC 1981 claims under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq,; and tort and contract claims identified in the complaint filed simultaneously with this Motion.

Certain of Plaintiff's claims detailed in the complaint have statutes of limitations which are now expiring. The EEOC processing of Plaintiff's Title VII charges of discrimination and retaliation will not toll the statutes of limitations on Plaintiff's tort or other non-Title VII claims. Therefore, it is necessary to bring suit now on the non-Title VII to avoid the negative effect of expiring statutes of limitations.

Bringing these claims now, before Plaintiff is authorized by the EEOC to sue on her Title VII claims, has certain hazards. First of all, it wastes substantial judicial and party resources by having to litigate simultaneously two proceedings arising out of the same facts. Further, by bringing suit now, Plaintiff may find that she is unable to amend the pleadings later to include the Title VII claims once she finally gets a Right to Sue from the EEOC. The discovery period in this court may have expired by the time Plaintiff could seek to amend her Complaint with the processed Title VII claims. She might also be precluded from bringing these claims in a separate action if the Court were to refuse to permit discovery after amending the Complaint. *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1355-56 (11th Cir.2000); *Butts v. County of Volusia*, 222 F.3d 891, 892 and n. 2 (11th Cir. 2000). The proper way to avoid this catch-22 is to file suit and simultaneously move this honorable court to stay the entire matter pending the outcome of the EEOC administrative proceeding. See, e.g., *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 41 (2nd Cir.1992) (plaintiffs may avoid claim preclusion by filing their other claims and seeking a stay to await the Title VII administrative proceeding or by filing the other claims and then amending after obtaining the right to sue letter from the EEOC, as cited in *Jang v.*

*United Technologies Corp.*, 206 F.3d 1147, 1148 (11th Cir.2000)). Plaintiff is requesting the court to follow this path, i.e., to stay the entire proceeding represented by the timely filed complaint filed with this Motion, until Plaintiff is allowed by the EEOC to prosecute her Title VII claims so that all claims are tried together in one proceeding. When the EEOC issues a Right to Sue, Plaintiff would then add to its currently filed complaint the additional Title VII claims so all claims arising out of the same set of facts can appropriately be litigated together in one proceeding. Judicial economy would be best served by this path.

Plaintiff therefore requests that the Court stay Defendant's obligation or permission to file any responsive pleadings, and to stay discovery and all other matters related to Plaintiff's complaint pending the outcome of the administrative EEOC proceedings, and to allow Plaintiff to add to her complaint her Title VII claims once the EEOC provides her with the required Right to Sue. As Plaintiff cannot be certain who will be representing Defendant in this matter, Plaintiff has requested that the sheriff serve on Defendant a copy of this Motion along with its Summons and Complaint.

This 1st day of March 2017.

Respectfully submitted,

**HIPES LAW LLC**

By: /s/ *Jeanne Bynum Hipes*
Jeanne Bynum Hipes
Georgia Bar No. 100575
Sheri Oluyemi
Georgia Bar No. 254547
Counsel for Plaintiff, Mercedes Williams

3

Hipes Law LLC
2475 Northwinds Parkway, Suite 200
Alpharetta, GA  30009
PH:    678-8677006
FAX: 770-783-5010
EMAIL:  counsel@hipeslaw.com

4

ID#2017-0029761-CV
⚖ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**17101593**

Ann B. Harris - 56
MAR 02, 2017 11:00 AM

*Rebecca Keaton*
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| MERCEDES WILLIAMS | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | CIVIL ACTION NO. _____ |
| vs. | ) | |
| | ) | |
| WELLSTAR HEALTH SYSTEM, INC. | ) | JURY TRIAL DEMANDED |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## PLAINTIFF'S MOTION TO STAY
## PENDING EXHAUSTION OF EEOC ADMINISTRATIVE
## REMEDIES

On February 17, 2017 Plaintiff herein filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") against the above-named Defendant. The charges relate back to August 19, 2016, EEOC charge number #410-2017-02452. These charges have to do with discriminatory treatment and retaliatory treatment made unlawful by Title VII of the Civil Rights Act of 1964, as amended ("Title VII") (for race and national origin discrimination and retaliation). Plaintiff is required to exhaust her administrative remedies by filing each of these claims with the EEOC before filing them with the court. The EEOC is tasked with investigating these claims. 29 CFR §1601.15. If no resolution occurs in the EEOC, the EEOC typically issues a Right to Sue letter, which gives Plaintiff the right to file these Title VII charges within 90 days in state or federal court. See generally, 29 CFR §1601 et seq. (Subpart B).

However, Plaintiff has other charges arising from the same circumstances as the above charges, which are not required (or even in some cases permitted) to go through the EEOC process.

1

These charges include race discrimination and retaliation under 42 USC 1981 claims under the Family Medical Leave Act, 29 U.S.C. § 2601et seq,; and tort and contract claims identified in the complaint filed simultaneously with this Motion.

Certain of Plaintiff's claims detailed in the complaint have statutes of limitations which are now expiring. The EEOC processing of Plaintiff's Title VII charges of discrimination and retaliation will not toll the statutes of limitations on Plaintiff's tort or other non-Title VII claims. Therefore, it is necessary to bring suit now on the non-Title VII to avoid the negative effect of expiring statutes of limitations.

Bringing these claims now, before Plaintiff is authorized by the EEOC to sue on her Title VII claims, has certain hazards. First of all, it wastes substantial judicial and party resources by having to litigate simultaneously two proceedings arising out of the same facts. Further, by bringing suit now, Plaintiff may find that she is unable to amend the pleadings later to include the Title VII claims once she finally gets a Right to Sue from the EEOC. The discovery period in this court may have expired by the time Plaintiff could seek to amend her Complaint with the processed Title VII claims. She might also be precluded from bringing these claims in a separate action if the Court were to refuse to permit discovery after amending the Complaint. *O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349, 1355-56 (11th Cir.2000); *Butts v. County of Volusia*, 222 F.3d 891, 892 and n. 2 (11th Cir. 2000). The proper way to avoid this catch-22 is to file suit and simultaneously move this honorable court to stay the entire matter pending the outcome of the EEOC administrative proceeding. See, e.g., *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 41 (2nd Cir.l992) (plaintiffs may avoid claim preclusion by filing their other claims and seeking a stay to await the Title VII administrative proceeding or by filing the other claims and then amending after obtaining the right to sue letter from the EEOC, as cited in *Jang v.*

2

*United Technologies Corp.,* 206 F.3d 1147, 1148 (11th Cir.2000)). Plaintiff is requesting the court to follow this path, i.e., to stay the entire proceeding represented by the timely filed complaint filed with this Motion, until Plaintiff is allowed by the EEOC to prosecute her Title VII claims so that all claims are tried together in one proceeding.  When the EEOC issues a Right to Sue, Plaintiff would then add to its currently filed complaint the additional Title VII claims so all claims arising out of the same set of facts can appropriately be litigated together in one proceeding.  Judicial economy would be best served by this path.

Plaintiff therefore requests that the Court stay Defendant's obligation or permission to file any responsive pleadings, and to stay discovery and all other matters related to Plaintiff's complaint pending the outcome of the administrative EEOC proceedings, and to allow Plaintiff to add to her complaint her Title VII claims once the EEOC provides her with the required Right to Sue.  As Plaintiff cannot be certain who will be representing Defendant in this matter, Plaintiff has requested that the sheriff serve on Defendant a copy of this Motion along with its Summons and Complaint.

This 1st day of March 2017.


Respectfully submitted,

**HIPES LAW LLC**


By: /s/ *Jeanne Bynum Hipes*
Jeanne Bynum Hipes
Georgia Bar No. 100575
Sheri Oluyemi
Georgia Bar No. 254547
Counsel for Plaintiff, Mercedes Williams


3

**Hipes Law LLC**
2475 Northwinds Parkway, Suite 200
Alpharetta, GA  30009
PH:   678-8677006
FAX: 770-783-5010
EMAIL:  counsel@hipeslaw.com

ID# 2017-0029763-CV
⚖ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**17101593**

Ann B. Harris - 56
MAR 02, 2017 11:00 AM

*Rebecca Keaton*
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

DISCLOSURE STATEMENT
CLERK OF SUPERIOR COURT

CASE NUMBER   (Assigned by Clerk)

# Mercedes Williams

Plaintiff

Vs.

# Wellstar Health System, Inc.

Defendant

## TYPE OF ACTION

○ 1. Divorce without Agreement Attached
○ 2. Divorce with Agreement Attached
○ 3. Domestic Relations
○ 4. Damages Arising out of Contract
◉ 5. Damages Arising out of Tort
○ 6. Condemnation
○ 7. Equity
○ 8. Zoning – County Ordinance Violations (i.e., Injunctive Relief-Zoning)
○ 9. Zoning Appeals (denovo)
○ 10. Appeal, Including denovo appeal – excluding Zoning

○ 11. URESA
○ 12. Name Change
○ 13. Other
○ 14. Recusal
○ 15. Adoption

## PREVIOUS RELATED CASES

Does this case involve substantially the same parties, or substantially the same subject matter, or substantially the same factual issues, as any other case filed in this court (Whether pending simultaneously or not)?

◉ NO
○ YES – If yes, please fill out the following:

   1. Case #

   2. Parties

   3. Assigned Judge

   4. Is this case still pending?   ○ Yes  ○ No

   5. Brief description of similarities:

/S/ Jeanne Bynum Hipes

Attorney or Party Filing Suit

ID# 2017-0029764-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**17101593**

Ann B. Harris - 56
MAR 02, 2017 11:00 AM

Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

# SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

CIVIL ACTION NUMBER ___17101593___

$216.00 COST PAID

Williams, Mercedes

---

**PLAINTIFF**

VS.

Wellstar Health System, Inc., DBA Wellstar

---

**DEFENDANT**

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

        **Jeanne Bynum Hipes**
        **Hipes Law LLC**
        **2475 Northwinds Parkway**
        **Suite 200**
        **Alpharetta, Georgia 30009**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 2nd day of March, 2017.**

        Clerk of Superior Court

        Rebecca Keaton, Clerk of Superior Court
        Cobb County, Georgia

Page 1 of 1

ID#2017-0029765-CV
**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**17101593**

Ann B. Harris - 56
**MAR 02, 2017 11:00 AM**

*Rebecca Keaton*

Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

# General Civil Case Filing Information Form (Non-Domestic)

| | | |
|---|---|---|
| **Court** | **County** ___Cobb___ | **Date Filed** ___03-02-2017___ |
| ☒ **Superior** | | MM-DD-YYYY |
| ☐ **State** | **Docket #** _____ | |

| **Plaintiff(s)** | **Defendant(s)** |
|---|---|
| Williams, Mercedes | Wellstar Health System, Inc., DBA Wellstar |
| Last First Middle I. Suffix Prefix Maiden | Last First Middle I. Suffix Prefix Maiden |
| | |
| Last First Middle I. Suffix Prefix Maiden | Last First Middle I. Suffix Prefix Maiden |
| | |
| Last First Middle I. Suffix Prefix Maiden | Last First Middle I. Suffix Prefix Maiden |
| | |
| Last First Middle I. Suffix Prefix Maiden | Last First Middle I. Suffix Prefix Maiden |

**No. of Plaintiffs** ___1___       **No. of Defendants** ___1___

| **Plaintiff/Petitioner's Attorney**   ☐ Pro Se | **Related Case** |
|---|---|
| | Case # _____ |
| Hipes, Jeanne Bynum | Parties _____ |
| Last First Middle I. Suffix | |
| | Assigned Judge _____ |
| **Bar #** ___100575___ | |

---

**Check Primary Type (Check only ONE)**

- ☐ Contract/Account
- ☐ Wills/Estate
- ☐ Real Property
- ☐ Dispossessory/Distress
- ☐ Personal Property
- ☐ Equity
- ☐ Habeas Corpus
- ☐ Appeals, Reviews
- ☐ Post Judgment Garnishment, Attachment, or Other Relief
- ☐ Non-Domestic Contempt
- ☒ Tort (If tort, fill in right column)
- ☐ Other General Civil Specify _____

---

**If Tort is Case Type:**

**(Check no more than TWO)**

- ☐ Auto Accident
- ☐ Premises Liability
- ☐ Medical Malpractice
- ☐ Other Professional Negligence
- ☐ Product Liability
- ☒ Other Specify ___Other___
  negligence in safe place to work, etc.

**Are Punitive Damages Pleaded?** ☒ Yes  ☐ No

---

☒ I hereby certify that the documents in this filing (including attachments and exhibits) satisfy the requirements for redaction of personal or confidential information in O.C.G.A. 9-11-7.1

# SHERIFF'S ENTRY OF SERVICE

Civil Action No. __17101593__

Date Filed __3/2/17__

Attorney's Address   Jeanne Bynum Hipes
Hipes Law LLC
2475 Northwinds Parkway
Suite 200
Alpharetta, Georgia 30009

Name and Address of Party to be Served.
Wellstar Health System, Inc.

793 Sawyer Road Attn: Reg. Agent Leo E. Reichert

Marietta, Georgia 30062

| Superior Court | ☒ | Magistrate Court | ☐ |
| State Court | ☐ | Probate Court | ☐ |
| Juvenile Court | ☐ | | |

Georgia, __COBB__ COUNTY

Williams, Mercedes

_____
Plaintiff

VS.
Wellstar Health System, Inc., DBA Wellstar

_____
Defendant

_____
Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL**
☐ I have this day served the defendant_____personally with a copy of the within action and summons.

**NOTORIOUS**
I have this day served the defendant_____by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____described as follows: age, about _____years; weight _____pounds; height, about _____feet and _____inches, domiciled at the residence of defendant.

**CORPORATION**
☒ Served the defendant _Wellstar Health Systems inc._ a corporation by leaving a copy of the within action and summons with _Heidi Hammond_ in charge of the office and place of doing business of said Corporation in the County.

**TACK & MAIL**
☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of the same in the United States Mail, first class in an envelope property address to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
☐ Diligent search made and defendant_____not to be found in the jurisdiction of this court.

This _02_ day of ___03___, 20_17_   _____ Deputy  0305